UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIDDELL BROTHERS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 15-13226-FDS |
| ) | |
| IMPACT RECOVERY SYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER ON MOTION TO TRANSFER VENUE**

**SAYLOR, J.**

This action arises out of a contract dispute between a general contractor and a manufacturer of traffic-control products. Plaintiff, Liddell Brothers, Inc., a Massachusetts-based general contractor managing a Massachusetts highway project, has filed suit against a Texas-based company named Impact Recovery Systems, Inc. The complaint alleges claims for breach of contract (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), fraud (Count Three), and violations of Mass. Gen. Laws ch. 93A (Count Four). Jurisdiction is based on diversity of citizenship.

Before Liddell filed suit in this Court, Impact filed two suits against Liddell in Texas, one in state court and one in the United States District Court for the Western District of Texas. The Texas state court has stayed that case, and a magistrate judge in the Western District of Texas has recommended dismissing the federal case on the grounds of improper venue.

Impact has moved to transfer venue to the Western District of Texas pursuant to 28 U.S.C. § 1404(a). For the following reasons, the motion will be denied.

I.    **Background**

    A.    **Factual Background**

The following facts appear to be undisputed unless otherwise noted.

From 2011 to 2013, Impact Recovery Systems, Inc., a Texas-based manufacturer of traffic-control equipment, sold various products to Liddell Brothers, Inc., a Massachusetts-based general contractor, for highway-construction projects. (Liddell Aff. ¶ 7). In early 2014, Liddell contracted with the Massachusetts Department of Transportation ("MassDOT") to serve as the general contractor for the Route 6 median-delineation project on Cape Cod. (Compl. ¶ 6). On March 25, 2014, Liddell sent MassDOT's plans and specifications for the project's lane-separator system to Impact. (*Id.* at ¶ 9, Ex. B).

On April 4, 2014, Impact sent Liddell a price quote by e-mail for its Tuff Curb XLP System. (Docket No. 7-1, Ex. 1). The price quote listed four products, with codes of "TUFFDP36Y-4," "182-6X12," "199," and "TC901XLP," for a total price of $914,000. (*Id.*). The price quote also contained a section titled "quote acceptance," with lines for a signature, title, and purchase order number. (*Id.*). The quote number was "00000744." (*Id.*).

On May 8, 2014, Impact sent Liddell a limited warranty on "product[s] sold and furnished by Impact Recovery Systems, Inc. on MassDOT project no. 605906." (Docket No. 7-1, Ex. 2). The limited warranty contained a forum-selection clause indicating that "the rights and obligations of the parties shall be construed and governed by the laws of the State of Texas," and designating Bexar County, Texas, as the exclusive forum for resolution of disputes between the parties. (*Id.*).

On June 19, 2014, MassDOT approved Liddell's intended use of Impact's Tuff Curb XLP System for the project. (Docket No. 7-1, Ex. 3). Specifically, MassDOT determined that

the system appeared to meet the specifications for item 835.19, the project's lane-separator system. (*Id.*).

On August 18, 2014, Liddell sent Impact a purchase order. (Docket No. 16-1, Ex. G). The purchase order included product codes "TP4-37.5YL-HY-HYQ" and "TCBY-QY" for a total of $914,000. (*Id.*). It stated "per quote #00000744." (*Id.*).

The purchase order also included a "terms and conditions" section. That section began, in all capital letters, "Vendor's performance under this purchase order expressly confirms its assent and acceptance of all terms and conditions as set forth in this purchase order form and any additional or different terms and conditions proposed by vendor are expressly rejected and shall have no binding effect on buyer whatsoever." (*Id.*). The terms and conditions also included a forum-selection clause:

> This Purchase Order is to be governed and construed in accordance with the laws of the Commonwealth of Massachusetts, and all disputes arising out of or in connection with this Purchase Order shall be brought in the applicable state court of the Commonwealth of Massachusetts.

(*Id.*). The purchase order included a signature block with the label "accepted by." (*Id.*).

Impact's President, Greg Hannah, made a hand-written alteration to the shipping terms at the top of the purchase order, and signed the signature block. (*Id.*). He returned the executed purchase order to Liddell for approval, designated by the "approved by" signature of Liddell's office manager Michelle Ingram. (*Id.*). Impact then shipped the products to Liddell.

On November 18, 2014, Liddell sent Impact two additional purchase orders that included the same terms and conditions. (Docket No. 16-1, Exs. H, I). Hannah again signed both purchase orders as "accepted." (*Id.*). On April 7, 2015, Liddell sent Impact a fourth purchase order that also included the same terms and conditions. (Docket No. 1-4, Ex. D). It does not appear that Impact executed that purchase order. (*Id.*).

3

On November 11, 2014, Liddell began installing Impact's Tuff Curb XLP System, and it completed work on the project in the spring of 2015. (Compl. ¶ 15). The underlying dispute concerns whether the anchor bolts in Impact's system were manufactured in the United States as required by the MassDOT.

### B.    Procedural Background

On August 14, 2015, Impact filed suit against Liddell in state court in Bexar County, Texas. (Docket No. 25). The complaint alleged claims against Liddell for breach of contract, quantum meruit, and promissory estoppel. (*Id.*). Liddell did not remove that action to federal court.

On August 24, 2015, Impact filed suit against Liddell in the United States District Court for the Western District of Texas, seeking a declaratory judgment. (Docket No. 26-1, Ex. A).

One day later, Liddell filed suit against Impact in this Court. (Docket No. 1).

On September 10, 2015, Liddell moved to dismiss the complaint in the Western District of Texas on the ground of improper venue pursuant to Fed. R. Civ. P. 12(b)(3). (Docket No. 26-1, Ex. A). In the alternative, Liddell moved for a transfer of venue to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). (*Id.*).

Impact then moved to dismiss the complaint in this Court on the ground of lack of personal jurisdiction. (Docket No. 7). It later withdrew that motion, and instead moved for a transfer of venue to the Western District of Texas pursuant to § 1404(a).

Liddell moved to stay the case in Texas state court pending the resolution of the venue motions in the two federal actions.

On December 16, 2015, Judge Saldaña of the 150th Judicial District, Bexar County, Texas, granted Liddell's motion to stay the state-court proceedings pending resolution of the two

venue motions in this Court and in the Western District of Texas.  (Docket No. 25, Ex. A).

On January 22, 2016, Magistrate Judge Mathy of the Western District of Texas issued a report and recommendation on Liddell's September 10, 2015 motion to dismiss.  (Docket No. 26-1, Ex. A).  Magistrate Judge Mathy recommended that Liddell's motion to dismiss for improper venue be granted.  (*Id.*).  In its 26-page opinion, the court noted that "both sides agree [that] a written forum-selection clause applies, but disagree as to which written clause is applicable."  (*Id.* at 9).  The court discussed "[t]he sequence of the parties' contract negotiations[, which] is essential to determine when the parties formed a contract."  (*Id.* at 11).  It concluded that "[a]fter careful consideration of the parties' arguments and authorities, the Court determines the parties' contract for the Tuff Curb XLP system was formed on August 18, 2014, when both parties signed Liddell's purchase order."  (*Id.* at 12).

The court pointed to three primary reasons for that conclusion.  "First, both parties signed Liddell's August 18, 2014 purchase order, and the purchase order contained the essential terms of the agreement."  (*Id.* at 12-13).  "Second, contrary to [Impact's] argument, Liddell did not accept the offer contained in [Impact's] April 4, 2014 price quote/limited warranty."  (*Id.* at 13) (noting that Liddell's failure to sign the "quote acceptance" portion of the price quote demonstrated that they "did not intend to agree to the terms of [Impact's] price quote," and that "Impact provides no legal authority for its argument that [the quote was] accepted as a contract when Liddell" submitted documents to the MassDOT).  Third, "contrary to [Impact's] argument, Liddell's August 18, 2014 purchase order was not an acceptance or written confirmation" of the price quote because it included a clause stating that "'performance under this purchase order expressly confirms its assent to and acceptance of all terms and conditions as set forth in this

purchase order form' and 'additional or different terms or conditions' are 'expressly rejected.'" (*Id.* at 14-15).

Accordingly, the court concluded that Liddell's purchase order, not Impact's price quote, was the enforceable contract, and that the Massachusetts forum-selection clause was controlling:

> Liddell's August 18, 2014 purchase order is the first contract between the parties regarding the Tuff Curb XLP System. All of the terms included in the August 18, 2014 purchase order have been expressly assented to by [Impact], including the forum-selection clause. Accordingly, the forum-selection clause in the August 18, 2014 purchase order controls all disputes about the goods at issue in that contract. Similarly, the forum-selection clause in the November 18, 2014 purchase orders—each of which were signed by both sides and each of which contain the same forum-selection clause as in the August 18, 2014 purchase order—controls disputes about the goods at issue in those contracts. Finally, the last purchase order, dated April 7, 2015, is not signed by both sides, but [Impact] does not contest it performed per its terms. Therefore, the forum-selection clause in the April 7, 2015 purchase order controls all disputes about the goods at issue in that contract.

(*Id.* at 16). Furthermore, the court concluded that Liddell's Massachusetts forum-selection clause was mandatory and enforceable. Accordingly, it recommended that the reviewing district court judge grant Liddell's motion to dismiss on the ground of improper venue because the forum-selection clause pointed to a Massachusetts state court, a non-federal forum.

**II.     Analysis**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . or to which all parties have consented." "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, ⎯⎯ U.S. ⎯⎯, 134 S. Ct. 568, 581 (2013). "Ordinarily, the district court would weigh the

6

relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* (quoting 28 U.S.C. § 1404(a)).

However, where a party has contractually agreed to a specific venue by means of a forum-selection clause, a court's calculus must change. *Id.* The presence of a valid forum-selection clause requires district courts to adjust their normal § 1404(a) analysis in three ways.

> First, the plaintiff's choice of forum "merits no weight." Second, the district court "should not consider arguments about the parties' private interests." Only public interest factors can be considered, however those factors "will rarely defeat a transfer motion." Third, when a plaintiff who is contractually obligated to file suit in a specific forum "flouts" that duty, a transfer of venue under § 1404(a) "will not carry with it the original venue's choice-of-law rules." Accordingly, a forum-selection clause should "be given controlling weight in all but the most exceptional circumstances."

*Kebb Mgmt., Inc. v. Home Depot U.S.A., Inc.*, 59 F. Supp. 3d 283, 286 (D. Mass. 2014) (internal citations omitted) (quoting *Atlantic Marine*, ⎯⎯ U.S. ⎯⎯, 134 S. Ct. at 579-83).

### A.     The Applicable Forum-Selection Clause

Impact's motion to transfer venue in this Court is essentially the mirror image of Liddell's motion to dismiss or transfer venue in the Western District of Texas.[1] The parties do not dispute that one of the two forum-selection clauses controls the venue determination. Rather, the dispute concerns whether the Texas forum-selection clause in Impact's price quote applies or whether the Massachusetts forum-selection clause in Liddell's purchase orders applies, as the Texas court found. For many of the same reasons that the Texas court determined that the purchase orders were the controlling contracts and that the Massachusetts forum-selection clause applied, Impact's motion to transfer venue will be denied.

It is undisputed that the agreement between Impact and Liddell is a contract for the sale

---

[1] Despite the magistrate judge's recommendation, Liddell's motion still appears to be pending in that case.

of goods governed by Article 2 of the Uniform Commercial Code. As with common-law contracts, contracts formed under the UCC require an offer and valid acceptance. *See* Mass. Gen. Laws ch. 106, §§ 2-206, 2-207(1). However, unlike the common-law mirror-image rule, the UCC does not require complete consistency in terms between an offer and an acceptance for a valid contract to be formed. Section 2-207 of the UCC, enacted at Mass. Gen. Laws ch. 106, § 2-207, provides as follows:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional or different terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
>> (a) the offer expressly limits acceptance to the terms of the offer;
>>
>> (b) they materially alter it; or
>>
>> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

Mass. Gen. Laws ch. 106, § 2-207.

At first glance, this case appears to present a "classic 'battle of the forms' sale, in which a buyer and a seller each attempt to consummate a commercial transaction through the exchange of self-serving pre-printed forms that clash, and contradict each other, on both material and minor terms.'" *Softub, Inc. v. Mundial, Inc.*, 53 F. Supp. 3d 235, 249 (D. Mass. 2014) (quoting

*Commerce & Indus. Ins. v. Bayer Corp.*, 433 Mass. 388, 392 (2001)).  Impact provided Liddell with a price quote containing a Texas forum-selection clause.  Liddell responded with a purchase order that added a Massachusetts forum-selection clause, which "materially alter[ed]" the terms of the price quote.  Mass. Gen. Laws ch. 106, § 2-207(2)(b).  Accordingly, it is appealing for the Court to conclude that the parties reached a contract according to their subsequent conduct (shipping and paying for the lane-separator system) pursuant to § 2-207(3), "knock-out" the conflicting forum-selection clauses, and potentially use the UCC's "supplemental terms" to determine whether a forum-selection clause should apply.

However, such a conclusion would ignore the UCC's requirements of a valid offer and acceptance in § 2-206 and § 2-207(1).  Section 2-206 provides:

> (1) Unless otherwise unambiguously indicated by the language or circumstances
>
>> (a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;
>>
>> (b) an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods, but such a shipment of non-conforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer.
>
> (2) Where the beginning of a requested performance is a reasonable mode of acceptance an offeror who is not notified of acceptance within a reasonable time may treat the offer as having lapsed before acceptance.

Mass. Gen. Laws ch. 106, § 2-206.  Section 2-207(1) provides:

> A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

Mass. Gen. Laws ch. 106, § 2-207(1).

It is questionable whether Impact's price quote was even a valid offer that could form the basis of a contract. In Massachusetts, "a price quotation . . . as a long-settled matter of law, does not constitute an offer, but rather an invitation to make an offer" unless it is sufficiently specific and tailored for an individual offeree. *Shimizu Corp. v. Dow Roofing Sys., LLC*, 2013 WL 5513035, at *5 (D. Mass. 2013) (citing *Cannavino & Shea, Inc. v. Water Works Supply Corp.*, 361 Mass. 363, 366 (1972)). Under that rule, it is a close call whether the price quote was an offer or whether it was a mere invitation that caused Liddell to make an offer by submitting a purchase order.

However, the Court need not determine whether Impact's price quote was a valid offer under § 2-206. Even assuming that it was a valid offer, for many of the same reasons that the Texas court provided, Liddell's August 2014 and later purchase orders were not valid acceptances of that purported offer.

To begin, Liddell's August purchase order was not an acceptance or mere written confirmation of Impact's price quote because it contained a merger clause. As noted, the terms and conditions in Liddell's purchase order provided that "Vendor's performance under this purchase order expressly confirms its assent and acceptance of all terms and conditions as set forth in this purchase order form and *any additional or different terms and conditions proposed by vendor are expressly rejected and shall have no binding effect on buyer whatsoever*." (Docket No. 16-1, Ex. G) (emphasis added). Section 2-207 states that "a definite and seasonable expression of acceptance or a written confirmation . . . operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, *unless acceptance is expressly made conditional on assent to the additional or different terms*." Mass. Gen. Laws ch. 106, § 2-207(1) (emphasis added). Because Liddell's purchase order required that acceptance be

10

"expressly made conditional on assent to the additional or different terms," it could not "operate[ ] as an acceptance" of Impact's price quote. *Id.*

Furthermore, Liddell's purchase order listed different product codes than Impact's original price quote, and contained different indemnity and choice-of-law provisions. Impact's president made a hand-written alteration to the shipping terms on Liddell's purchase order, but did not make any changes to the forum-selection clause or any of the other terms and conditions. Moreover, Impact expressly accepted all of the additional or different terms in the purchase order by signing it. In contrast, Liddell never signed Impact's price quote, even though it contained a signature block entitled "Quote Acceptance." Certainly, signing the signature block on the price quote would have been a "medium [of acceptance] reasonable in the circumstances." Mass. Gen. Laws ch. 106, § 2-206(1)(a). Instead of signing the price quote, Liddell sent a counteroffer—the purchase order—to Impact. Finally, in light of the immediacy with which the parties communicated by e-mail, and given their past contractual relations, the delay of nearly four months between Impact's price quote and Liddell's purchase order hardly seems, in context, like acceptance in a "reasonable time." Mass. Gen. Laws ch. 106, § 2-207(1).

In short, even if the Court construes Impact's price quote as an offer, Liddell's purchase order was not a valid acceptance of that offer. Not only did it request—four months after the price quote—what appear to be different products, but it also contained a merger clause expressly rejecting Impact's terms and conditions. Therefore, Liddell's August 2014 purchase order was a counter-offer that Impact accepted and executed when it signed the agreement and shipped the product. Accordingly, the purchase order formed the basis of the parties' contract, and its Massachusetts forum-selection clause controls.

### B.  Scope of Liddell's Massachusetts Forum-Selection Clause

"'Under federal law, the threshold question in interpreting a forum-selection clause is whether the clause at issue is permissive or mandatory.'" *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014) (quoting *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir. 2009)).  "'Permissive forum-selection clauses . . . authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere . . . . In contrast, mandatory forum-selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum.'" *Id.* (quoting *Rivera*, 575 F.3d at 17).

As the Texas court concluded, the forum-selection clause in Liddell's purchase orders is mandatory because it contains clear language providing for an exclusive forum to resolve all disputes under the contract.  It provides that "all disputes arising out of or in connection with this Purchase Order shall be brought in the applicable state court of the Commonwealth of Massachusetts." (Docket No. 16-1, Ex. G).  Finally, Liddell's claims in its complaint certainly fall within the broad scope of the forum-selection clause because they relate to products that it purchased from Liddell under the contracts.

### III.  Conclusion

For the foregoing reasons, Impact's motion to transfer venue to the Western District of Texas is DENIED.

**So Ordered.**

|  |  |
|---|---|
|  | /s/ F. Dennis Saylor |
|  | F. Dennis Saylor IV |
| Dated: March 21, 2016 | United States District Judge |